We finish with 18-3016, Wichita Center for Graduate Medical Education v. United States. And Mr. Sykes, you're for the appellant. Thank you, Your Honor. May it please the Court. I want to jump right in and address the burdens of, not proof because we're dealing with law, but the burdens under the legal standards. And there are three legal burdens that the IRS must carry to win this case. The first is the liberally construed burden. And that's been recognized over and over in the cases. The second is the no-doubt burden. That is, in order for the IRS to win, there has to be no doubt that they're entitled to win. And the third is connected to the in peri materia canon, upon which we rely heavily. And that is the plain intent of Congress, plain evidence of a congressional intent to the contrary, an intent running against in peri materia. And it kind of baffles me that we've had the difficulties we've had with establishing that we're entitled to the standard rate of interest in view of those three burdens. Those are incredibly tall hills to climb, but yet the courts seem not to have applied them. I actually see next to no evidence that any of the three circuits ever applied them. Number one, they don't recite these burdens in any of the opinions. There's no mention of any of them. I guess they don't get there because they think corporations includes a nonprofit, right? So why do you get to the- Well, but we start with a statute here, which provides for corporation to have a specialized meaning, C corporation. And we've got a symmetry rule requiring overpayments and underpayments to be treated symmetrically by those And there's no reason why these shouldn't be treated symmetrically. In fact, Your Honor, if symmetrical treatment is not provided, it leads to what the Sixth Circuit called strange effects that warranted sympathy for the taxpayer. And the effects are corrosive because they promote a refusal to pay tax, the way the asymmetries run in this case. So beyond the in peri materia provision or doctrine, we have the asymmetry provision. Staying on that point, under your proposed definition, what would the overpayment rate be for an S corporation, for example? It depends on- I've got two suggestions, Your Honor. There are three different places where the word corporation found an A1 could land. One is C corp. And that meaning is taken from C3, by way of in peri materia, by way of the symmetry provision. Then there's the other extreme. And that is an as broad as possible definition, what I call the three opinions. The ABAP opinions, as broad as possible. Opinions where you go to the dictionary, and as long as it meets certain standards, but not including any for-profit requirement. Because when you go to the dictionary, it doesn't include a for-profit requirement. So that's where the courts have landed. And then there's a middle ground. And it's my position that we land either at C corporation or we land at the middle ground, which is for-profit. And either one of those leads to a win on our part. And in answer to your question about S corporations, obviously, if it's a C corporation definition, they are outside that and would receive the standard rate, just like we believe we're entitled to. In the middle, for-profit, that would snag the S corporations. And, well, they would be, I want to make sure I don't get this turned around, but, you know, if it's for-profit, S corporation is for-profit. It seems like a convoluted way to get there. Well, not if we're faithful to the statute. Is there a canon of simplicity? Well, tax law doesn't, I don't think tax law has a canon requiring simplicity. I think we just need to be very loyal to the statute. I want to jump to the intermediate category, Your Honor, of for-profit entities. And that's the Kintner regulations. In effect, from 1960 to, nominally to 1997, however, the Kintner regulations were legislatively reenacted. And I spent a lot of time on legislative reenactment in one of my briefs. And it's been very disappointing, my experience with the federal courts. You do, and, well, it may have been disappointing, but it's not clear to me at all why the Kintner regulations are even opposite here. I mean, why do they even matter? I mean, they're superseded. They were superseded by this check the box thing. So why do they matter? It's because they became incorporated into the statute in 1994. Well, you can say that. But, I mean, is there anything that says that expressly, that's what we're doing? You're inferring that. I'm sorry. No, please, go ahead. The cases that I cited, I think there were five of them. Yeah. And I believe they talk about incorporation using that word. And the usual understanding of incorporation is that it's drawn in. And the other reason why I don't think the 1997 regulations do any damage to our position is because they're not in conflict. All they answer is whether an entity is a corporation. They don't answer the pivotal question here. What type of corporation? You know, the 1997 regs don't talk about that. Which would cause one to fall back on a plain language understanding of what corporation means. And that would get you to a point where corporation means for-profit and non-profit. Well, that, of course, is the government's argument with which we disagree because all kinds of crazy things flow from that. There's an asymmetry between the underpayment rate that's paid and the overpayment rate. There's a mismatch. And that is something that the Supreme Court says is to be avoided, if possible, under the symmetry provision. You mean Congress can't decide to have a different underpayment and overpayment rate? Well, again, there's this no-doubt canon. There's this liberally construed canon. There's this third canon with regard to inferior material that there has to be a plain evidence. And Congress could speak plainly. It could have said every corporation. Well, it says overpayment one rate, underpayment another rate. Why isn't that speaking clearly? How much more clearly do you need than that? Well, the debate isn't – I don't see that that resolves the debate respectfully. Okay. I think that – and this is, you know, what I've argued and argued – that you've got a 1990 amendment which said that corporate means C corporation. And then you come up with a 1994 amendment dealing with overpayments where they use the word corporation. And I view corporate repeated four times in that 1990 amendment in the headings. I mean, that's a protruding term used in the 1990 amendment. And the 1994 amendment follows on with that. Well, then you're saying corporate and corporation are the same. Exactly. Well, on your inferior material, every court that's considered that has gone against you, haven't they? Well, I would like to read just a single sentence from Rosillo. How about yes and no to that question? Pardon me? Has every court that has considered that? Oh, yes. Yes. No question. All right. And I believe respectfully that they've all gotten it wrong because they started out with Rosillo. And by the way, I mean, the fact that every court has gotten it wrong – and I mean no disrespect for the courts, but tax is a complicated thing. And I think that the first domino fell and then other courts – I'm not saying they're right. I'm just saying that you've got a bunch of judges who have disagreed with you. That doesn't mean they're right. I'm open to hearing what you've got to say. I would like to read one sentence. And in the first two opinions that came out, one from the Second Circuit, one from the Sixth Circuit, they relied on Rosillo as pivotal in rejecting my unparalleled material and rejecting my symmetry arguments. And it says this, and it just doesn't even apply. But I'll let the court obviously judge for that. But it's so important that I want to read it. Where Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. We don't have the same act. We've got the term corporate defined as C corporation in the 1990 enactment. And then in 1994, you've got an entirely different enactment which uses the word corporation. And Rosillo just doesn't apply. So, I mean, you're off on the wrong foot if you start with Rosillo, I would submit. You're talking about different acts, different amendments, right? Yeah. They're different amendments, but they fall under the same statute ultimately, right? In other words, when Congress was legislating in 1990 and 1994, it was doing it against the framework of the same statutory text, right? Yes. Okay. And then if Congress is, I think the inference would be that Congress, when it acted in 1994, knew what ground it was operating under and, therefore, it had a disparate effect and the disparate effect was meant to be disparate. Well, the argument I would make back is that this says same act. These are not the same act. One is by the 1994 Tax Reduction Act and the other was the 1990 Budget and Reconciliation Act or something. You know, this is very precise. It comes out of the Supreme Court. Same act. These are not the same acts. They're the same statute, but they're not the same act. And, you know, if Congress was aware, the in peri materia and the symmetry provisions ought to push us toward a symmetrical reading of the terms corporate and a corporation. Bormes is a case that the courts just refuse to address. There are two Bormes cases. And they say that where you are amending, where Congress is amending a statute, it doesn't need to repeat the definition provided in the original statute. In other words, no need to repeat a definition. We have a definition of corporate, see corporation. Down here we have corporation. Different word. Adjective and noun forms of the very same word. And NCUA, another decision, National Credit Union Association, another decision that has been wholly ignored, says that similar terms have the same meaning when they're in the same statute. I think these are similar terms. Again, there has to be no doubt. Has to be liberally construed. Has to be plain evidence of congressional intent, plain evidence of congressional intent, to go against all of these things. And then the Kinter regulations, they give a definition, which was in place in 1994. If you want to figure out what Congress meant in 1994, you look at the regulations that were in place in 1994 under the definitional provision defining corporation, 7701A3, defined corporation. And then there's a reg which says, you know, what are the characteristics of corporation? And there is a, when Congress wrote that reg, it kicked out, there's lots in the record, in GCMs they're called, it kicked out any reference to non-profits. So you have a very clear definition that excludes non-profits. I'd like to reserve the rest of my time, if I may, Your Honor. Roberts. You may. Thank you. Good afternoon. May it please the Court. Deborah Snyder for the United States of America. Because Wichita Center is a corporation, it properly received interest on its overpayments at the rate that the code, rates that the code sets for corporations. The district court's judgment in this case is therefore correct. And I would also note as a preliminary matter that it's undisputed that nothing distinguishes this case factually from the other cases that the courts have decided on this exact same issue, including the cases decided by the Second, Sixth, and Seventh Circuits. And as we've explained in our brief, and as those courts have held, the code contains a definition of the term corporation in Section 7701, and that definition is controlling. It includes corporations that are corporations under State law, and that's something that this court held explicitly in 1969 in the case of United States v. Empey, that the term corporation under the code includes State law corporations like the Wichita Center in this case. And that's also clear from the structure of the Internal Revenue Code, which imposes a tax on every corporation, and then it has a carve-out or an exemption for corporations that are charitable and therefore exempt from income tax under Section 501c3. That exemption would not be necessary if a 501c3 corporation were not a corporation in the first place. And, of course, we disagree with Wichita Center that Section 6621a1 has its own definition of the term corporation. Their argument, of course, relies on a cross-reference in Subsection 6621a1 that says taxable period as defined in Subsection c3. But as the other courts have explained on this issue, that cross-reference refers to the term taxable period. And when you read the statute that way, it all makes sense. Section — Subsection c3 does not, in fact, define the term corporation, which is a fundamental problem on which the taxpayers' arguments are all based. There's no definition of corporation in that cross-reference that they can pick out and import into Subsection a. There is a definition of large corporate underpayment, but that's a term of art and not a definition of the separate term corporation. Mr. Snyder, what do you do with all of the three specific, I think, canons that were invoked by your opponent at the beginning, including, I think, the no-doubt canon? Do you think those really are valid? And if so, do you overcome them by virtue of the plain statutory text? You know what I'm talking about, right? Yeah. I don't think those canons apply in this case. I know the first one — the first two seem to be kind of related. They're saying that the statute should be — Symmetry, I think, was one of them. I'm sorry? Symmetry was one of them, I believe. Oh, symmetry was one of them also. Right. Under the symmetry principle, well, as you noted on your questioning earlier, asymmetry is actually written into the statute. It has rates for underpayments. It has rates for overpayments. So there's no symmetry principle that overcomes the plain language of the statute. And, in fact, the reason that that exists is that in this area, as in a lot of areas in tax, Congress does not necessarily legislate for policy reasons. It legislates for revenue reasons. And that's apparent when you look at the legislative history for the 1994 amendment, which put in that .5 percentage point provision, is that basically they needed to make up some revenue that they were losing from tariff concessions. And so that's why they changed the rate. So the rates are asymmetrical because the statute says that they're asymmetrical, and there's certainly no symmetry principle that would overcome the plain language of the statute. I think another one of their canons was their contention that the statute should be liberally construed in their favor. But there's no ambiguity in the statute to construe one way or the other. The statute's clear. It says the rates that apply to a corporation are these particular rates. Wichita centers a corporation, so the corporate rates apply. And as a general matter, in any event, the Supreme Court rejected the general proposition that tax statutes should always be construed in favor of the taxpayer. And that was in the case of United States v. White, which we've cited in our brief. So I think those are the canons, I believe, that you may have been referring to when you were asking me. Yeah, and I'm just responding to what he said, your opponent. But, I mean, I guess the bottom line, if I understand it from your response, is simply that canon or not, we have to look at the plain statutory text and be led by it if it speaks to the issue. Right. Yeah, I think the fundamental canon is the statute. We go by the plain language of the statute, which says what it says. Yes. You know, if Congress had said something else in this particular statute, you know, like if there were an exception, then, you know, that we'd have a different result. And, I mean, there's nothing manifestly incompatible with the intent of the Code in applying the plain language of the statute either. You know, as I mentioned, Congress legislates in this area for revenue reasons more than anything else. I know that Wichita Center is relying on regulations. We believe that the regulations are not relevant here because, as the other courts have all held in this area, that the answer to this case is dictated by the plain language of the statute. What about the incorporation argument? Well, the legislative reenactment doctrine has nothing to do with this case. Generally, that doctrine comes into play if there's an ambiguity in the statute and you might want to interpret that ambiguity by reference to a longstanding judicial or administrative interpretation. There is no ambiguity in this statute that would need to be interpreted in that manner. In fact, the Internal Revenue Code's definition of corporation has been in Section 7701, well, or it's been in the Code as it now exists in Section 7701 since 1918. That definition has not changed, and under that definition, a corporation under State law is a corporation for Federal income tax purposes. And in any event, there actually is nothing, even if the reenactment doctrine could apply here, there is nothing that could be reenacted because there is no regulation under which Wichita Center, as a State law corporation, would have been a non-corporation. So, you know, at the bottom of that argument, there's really no there there. A State law corporation is a corporation. What the regulations under 7701, both the Kintner regulations, which were superseded and therefore don't apply to this case, and also the check-the-box regulations, what those regulations have done is they have attempted to deal with the situation of entities that are not incorporated under State law and have attempted to say how those things should be tasked. Like, if it's an association that's not incorporated, should it be a corporation, should it be a partnership, should it be treated in one of those ways or another? So, given the fact that the appellant here is incorporated under State law, that whole dynamic between the regulations would have never been applicable anyway. That's right. That's right. In fact, the Kintner regulations, again, I don't think these apply here, but these Kintner regulations that don't apply to this case actually have a provision called effect of local law, and it says the term corporation is not limited to State law corporations but includes also an association, et cetera, et cetera. Therefore, they proceed from the premise that a State law corporation was a corporation. And if the Court would like to refer to the language, the taxpayer attempted to file a supplemental appendix with a reply brief, and that language is on pages 7 and 15 of the supplemental appendix. But I don't think we get anywhere near the Kintner regulations in this case, because the question is answered by the statute. And as the Second, Sixth, and Seventh Circuits have all held, under the plain language of the statute, the taxpayer, which is a corporation, gets the overpayment rates that apply to corporations. So you don't even get to the regulations. But even if you did, you certainly wouldn't get to the ones that were superseded before the tax periods that are at issue in this case. But your point, if I understood you correctly, was even the check-the-box regulations were designed to deal with a different situation than a corporation that is a corporation as a function of State law. In other words, the check-the-box regulations were designed to deal with entities that were not incorporated under State law, and therefore how to treat them. So both sets of corporations are essentially, I mean, both sets of regulations are essentially an opposite. That's right. And the check-the-box regulations came into effect because what had happened since the Kintner regulations were put in place is that there was a greater proliferation of these hybrid entities, LLCs, LLPs, things like that, that didn't really quite fit. And I think there was a recognition that the regulations potentially had to evolve to encompass these other entities. But, yeah, even under the check-the-box regulations, too, if you had to look there, a State law corporation is a corporation. And the court that did that analysis is actually the district court in the Maimonides case, which explained two different bases on which the taxpayer would be a corporation under those regulations if they applied, either because it was won automatically or because it was deemed to have elected to be so. So, you know, that's how that would come out under those regulations. But I don't think the court needs to reach that point because I think the statute establishes overpayment interest rates for corporations, and a State law corporation has been a corporation under the code. And even under the plain language of the term, in Detroit Medical Center, the court did a – they went back centuries and did an analysis of how, for centuries, the term corporation, even under the plain meaning of the term, has been understood to include State law corporations, whether for-profit or non-profit. So there's nothing that the court could look at here that would lead to a result that's different from the result that's determined by the plain language of Section 6621. Does the Court have any further questions? Roberts. Thank you, Ms. Snyder. We ask for affirmation. Thank you. Mr. Sykes, do you have some rebuttal time? Thank you. I want to start out by just indicating that we aren't dealing with whether a corporation was a corporation. That is not the issue here. It's which type of corporation. The code has several types of corporations. It draws distinctions across the code between the treatment of, say, a C corp, between the treatment of an S corp. There are State-owned corporations, for example, and that's been a distinction that's drawn. Lots of distinctions are drawn. The word corporation does not inevitably encompass all of them. A great example is Notice 2018-18, which I brought to the Court's attention in my brief. It was issued in order to implement the Tax Cuts and Jobs Act, where the statute dealing with carried interest, a big Wall Street issue, the statute had cut down on carried interest. The word corporation was in the statute. The IRS came out and said corporation doesn't include S corporations. In other words, corporation has a variety of different meanings under the code. I also want to respond very vigorously to the notion that State law controls. It doesn't control. The Kintner regulations have a whole section, and I quoted in my brief from Professor Bittker. I would invite the Court to read Professor Bittker what he had to say back in 1961. So it's just not true that whether it's a State law, corporation controls this issue. And with that, I'll conclude. Thank you, Counselor. I think we follow your arguments. We appreciate the time this morning. You're excused, and the case shall be submitted.